# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BYTEMARK, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOKEN TRANSIT, INC. <br><br> Defendant. | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Bytemark, Inc. ("Bytemark" or "Plaintiff"), files this Complaint against Defendant Token Transit, Inc. ("Token Transit" or "Defendant") and as claim for relief states as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Act.

## PARTIES

2. Bytemark is a Delaware corporation organized and existing under the laws of the State of Delaware with a place of business at 268 W 44th Street, 3rd Floor, New York, New York 10036.

3. Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open APIs. Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for consumers and merchants.

4. On information and belief, Token Transit is a Delaware corporation organized and existing under the laws of the State of Delaware and founded in San Francisco, California, with a place of business at 3425 19th Street #17, San Francisco, California 94110.

5. On information and belief, Defendant provides mobile ticketing technologies to municipal transit agencies and sells a mobile ticketing app through which consumers can purchase and use transit tickets on their smartphones or other mobile devices.

6. On information and belief, Defendant advertises, sells, and conducts business throughout the United States, including within this District in the State of Delaware. On information and belief, at all relevant times Defendant was in the business of offering for sale and selling its mobile ticketing systems in the United States.

## JURISDICTION

7. This Court has subject matter jurisdiction under Title 28, United States Code, §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

8. Venue in this judicial district is proper under Title 28, United States Code, §§ 1391 and 1400 because Defendant is incorporated in the State of Delaware and because Defendant conducts business within this District, advertises within this district, and offers for sale and/or sells in this District its application and system that infringes Plaintiff's patents, including to customer Delaware Transit Corporation, which operates as DART First State ("DART"), and its customers, who are located in this District and use and/or have used Defendant's infringing system and application in this District.

9. This Court has personal jurisdiction over Defendant because Defendant is incorporated in this District and has purposely availed itself of the privileges and benefits of the

laws of the State of Delaware. Personal jurisdiction over Defendant is also proper because of Defendant's continuous and systematic contacts and business activities within the state of Delaware and within this District.

## BACKGROUND

10. Bytemark is the owner of all rights, title and interest in and to United States Patent Nos. 8,494,967 ("the '967 patent"), attached hereto as Exhibit A, and 9,239,993 ("the '993 patent"), attached hereto as Exhibit B (collectively the "Patents-in-Suit").

11. Bytemark and Defendant are competitors in the niche mobile ticketing market. Competitors in this market frequently bid against each other to provide mobile ticketing services to municipal transit agencies and other entities across the nation.

12. On information and belief, Defendant has offered for sale and/or sold its infringing visual validation application and system, including but not limited to the Token Transit app, to municipal transit agencies including DART in Sussex County, Delaware, RTS in Humboldt, California, Vine Transit in Napa, California, Big Blue Bus in Santa Monica, California, Gary Public Transit in Gary, Indiana, Citilink in Fort Wayne, Indiana, Riverside Transit in Riverside, California, Starmetro in Tallahassee, Florida, Startran in Lincoln, Nebraska, Kern Transit in Kern County, California, Anaheim Resort Transportation in Anaheim, California, The Bus in Springfield, Missouri, Metro Transit in Kalamazoo, Michigan, and Champaign-Urbana MTD in Champaign-Urbana, Illinois, among others.

13. Defendant offers for sale and sells its infringing visual validation application and system, the Token Transit app, in the United States and the State of Delaware, including through its interactive website, www.tokentransit.com. Transit users can enter a phone number at the Token Transit website and Defendant will text the user a link to download the Token Transit

application.  The Token Transit app is also available for download from Google Play and the Apple App Store.

14. On information and belief, as a competitor in the niche mobile ticketing market, Defendant is aware of patents issued that disclose and claim inventions relevant to mobile ticketing.  The Patents-in-Suit have been previously asserted in patent infringement actions against Token Transit's competitors, *inter alia*, Masabi, Inc., Xerox Corp., Unwire US, Inc., and Moovel, formerly Globe Sherpa, a case that was the subject of national press.

15. On information and belief, although Defendant has been aware of the inventions disclosed and claimed in the Patents-in-Suit since they were issued, Defendant nevertheless consciously decided to offer for sale, sell, and practice its visual validation mobile ticketing application and system that infringes at least claim 1 of the '967 patent literally and/or under the doctrine of equivalents and at least claim 1 of the '993 patent literally and/or under the doctrine of equivalents.

**THE PATENTS-IN-SUIT AND PLAINTIFF'S V3 TICKETING TECHNOLOGY**

16. The Patents-in-Suit disclose and claim a novel system and method of electronic ticketing such that the ticket is verified at the entrance of venues by means of an animation or other human perceptible verifying visual object that is selected by the venue for the specific event.

17. The Patents-in-Suit are directed to improving efficiency and security of mobile ticketing through innovation in server/computer/remote device technology.  The Patents-in-Suit improve on the mobile ticketing verification process by "providing a human perceptible visual display that the venue can rely on to verify the ticket without using a scanning device."

18. The specifications of the Patents-in-Suit explain that under old electronic ticket verification systems, an "electronic ticket was displayed as a bar code on the recipient's telephone display screen." These systems were "fraught with error" and because bar-code scanners were "not designed to read a lit LCD screen displaying a bar code," the "reflectivity of the screen can defeat the scanning process."

19. As disclosed and claimed, the Patents-in-Suit present an innovative solution over prior art bar coding where the claimed inventions use the transmission of tokens in a particularized, unconventional order, and associated technology to provide greater security in the ticketing process.

20. Bytemark has secured contracts relating to its V3 Ticketing Technology within the mass transit industry. These contracts have been highly publicized and are well known in the mobile ticketing market.

21. Bytemark's website identifies its visual validating mobile ticketing applications and systems, including its V3 Ticketing Technology, as being covered by U.S. Patent Nos. 8,494,967 and 9,239,993.

**DEFENDANT'S INFRINGING APPLICATION AND SYSTEM**

22. The Token Transit app is a universal "easy-to-use mobile app for riders to pay their bus fare using their smartphones."

23. The Token Transit app allows a user to set up an account with a credit or debit card. Upon setting up an account, a user may select and purchase a fare using the credit or debit card on account.

24. After the purchase is processed and confirmed, a "stored pass" appears in the user's "pass wallet." To use his or her pass, a user taps the stored pass to "activate" and shows the bus driver the screen of his or her phone (remote display device).

25. The remote display device displays a display object that is readily recognizable visually by a ticket taker. For example, "[t]he passes vary in color and image by day and show the time down to the second with movement." A previously purchased electronic ticket also employs motion, such as "words moving back and forth" when the pass is available for use.

26. A ticket taker is able to distinguish valid electronic tickets from fake tickets because with fake tickets "there is no motion, the time is wrong, and the color of the day/picture might be wrong."

27. The Token Transit app is "live in nearly 30 cities across the country."

## COUNT ONE
## INFRINGEMENT OF U.S. PATENT NO. 8,494,967

28. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-27 herein.

29. Plaintiff alleges infringement by Defendant's mobile ticketing application and system, including the Token Transit mobile application, that includes a method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker and all claim elements recited in claim 1. *See* Exhibit A.

30. The Token Transit application and system includes "A method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker." The Token Transit app is used or has been used by various transit agencies including Big Blue Bus in Santa Monica CA, Long Beach

Transit in Long Beach CA, DART in Sussex County DE, and MCAT in Manatee County FL. The Token Transit system employs back-end server system interaction with an application on a smart phone such as an Android phone or iPhone (a user's computer device).

31. The Token Transit application and system enables the user to buy tickets online and to provide a visual validation of the possession of a purchased electronic ticket to a ticket taker (a bus driver).

32. The user's smart phone is in communication with a Token Transit server system for purchasing of tickets, and for obtaining a visual validation of the possession of a purchased electronic ticket.

33. The Token Transit app includes "receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket." The transit user purchases an electronic ticket using a smart phone and receives a validation that the purchase has been successful. For example, after a ticket has been purchased, it is nevertheless not available for use and is stored in a "Pass Wallet" with a further instruction to "tap to use."

34. The Token Transit app includes the claim element "and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket for utilization of a service monitored by the ticket taker, the visual validation display object configured to be readily recognizable visually by the ticket taker." Upon tapping, the user obtains a visual validation display object from the Token Transit server. The visual validation display object features several components that make it readily recognizable visually by the ticket taker (bus driver), including a local picture of the day unique to each transit agency, a color of the day, display of the current time, and motion on the ticket (words moving back and forth).

35. The Token Transit app includes the claim element "receiving from the user's computer device a token associated with the received request." On information and belief, purchasing a ticket, "activating" a ticket, and obtaining a visual validation display object are online transactions that involve a Token Transit server. Since online transactions may be separated in time, a token associated with a purchased ticket enables the server system to link a request from the smart phone with a particular user ticket.

36. The Token Transit app includes the claim element "determining whether a token associated with the purchased electronic ticket has been stored in a data record associated with the received request, and if it has, whether the received token is valid." On information and belief, the Token Transit server system determines whether a token associated with the electronic ticket purchased by the transit user has been stored in a data record associated with the received request, and if it has, whether the received token is valid.

37. The Token Transit app includes the claim element: "in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker." On information and belief, the Token Transit server system in dependence on the determination that the received token is valid, causes an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker.

38. Pursuant to 35 U.S.C. § 271(a), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '967 patent by

offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing Token Transit mobile application in the State of Delaware and elsewhere in the United States.

39. In violation of 35 U.S.C. § 271(b), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '967 patent indirectly by inducing the infringement of the '967 patent claims by third parties and by encouraging customers and others to purchase and use the infringing system and application including the Token Transit mobile application.

40. Despite notice of infringement, Defendant continues to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for its infringing application with the knowledge or willful blindness that its conduct will induce its customers to infringe the '967 patent's asserted claims.

41. In violation of 35 U.S.C. § 271(c), Defendant has infringed and is continuing to infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '967 patent indirectly by contributing to the infringement of the '967 patent's claims.

42. Defendant has contributed and continues to contribute to the infringement of at least claim 1 of the '967 patent because it knew that the application and system it offers for sale and sells is infringing and is not suitable for substantial non-infringing use.

43. As a result of Defendant's infringement of the '967 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

44. Defendant's infringement of the '967 patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '967 patent.

45. Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '967 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendant from continuing such infringement.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 9,239,993

46. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-45 herein.

47. Plaintiff alleges infringement by Defendant's mobile ticketing application and system, including the Token Transit mobile application, that includes a method performed by a computer system for displaying visual validation of the possession of a previously purchased electronic ticket for utilization of a service monitored by a ticket taker and all claims elements recited in claim 1. *See* Exhibit B.

48. The Token Transit application and system includes "A method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker." The Token Transit app is used by various transit agencies including Big Blue Bus in Santa Monica CA, Long Beach Transit in Long Beach, CA, DART in Sussex County DE, and MCAT in Manatee County FL. The Token Transit system employs back-end server system interaction with an application on a smart phone such as an Android phone or iPhone (a user's computer device).

49. The Token Transit application and system enables the user to buy tickets online and to provide a visual validation of the possession of a purchased electronic ticket to a ticket taker (bus driver).

50. The user's smart phone is in communication with a Token Transit server system for purchasing of tickets, and for obtaining a visual validation of the possession of a purchased electronic ticket.

51. The Token Transit app includes the claim element "transmitting a token associated with a previously purchased electronic ticket to a remote display device, wherein the token is a unique alphanumeric string." On information and belief, a token associated with a previously purchased electronic ticket is transmitted to the smart phone thereby providing a linkage between a particular ticket and smart phone operations that are to be performed relating to the ticket. The Transmitted token is a unique alphanumeric string associated with the ticket number.

52. The Token Transit app includes the claim element "wherein a copy of the unique alphanumeric string is stored on a central computer system." A copy of the unique alphanumeric string (e.g., ticket token) is also stored on Defendant's central computer system, which allows a user to recover an electronic ticket in the event the user loses his or her phone.

53. The Token Transit app includes the claim element "validating the token by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the remote display device." The token is validated by matching the token transmitted to the smart phone to the copy of the unique alphanumeric strong stored on the central computing system to provide a ticket payload to the smart phone.

54. The Token Transit app includes the claim element "securing a validation display object prior to transmission to provide a secured validation display object." On information and

belief, a validation display object is secured in the Token Transit system prior to transmission to provide a secured validation display object.

55. The Token Transit app includes the claim element "transmitting to the remote display device a secured validation display object associated; with the ticket payload." On information and belief, the Token Transit system transmits to the smart phone a secured validation display object associated with the ticket payload.

56. The Token Transit app includes the claim element "enabling the remote display device to display the secured validation display object upon validation of the token for visual recognition by the ticket taker." The Token Transit system enables the smart phone to display the secured validation display object upon validation of the token for visual recognition by the ticket taker.

57. The Token Transit app includes the claim element "or preventing the remote display device from displaying the secured validation display object in the event that the token is not validated." On information and belief, the Token Transit system prevents the smart phone from displaying the secured validation display object in the event that the token is not validated.

58. Pursuant to 35 U.S.C. § 271(a), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '993 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing application and system including the exemplary product/system the Token Transit mobile application in Delaware and elsewhere in the United States.

59. In violation of 35 U.S.C. § 271(b), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '993 patent

indirectly by inducing the infringement of the '993 patent's claims by third parties and its customers by encouraging these customers and others to purchase and use the infringing system and application.

60. Despite notice of infringement, Defendant continues to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for its infringing application with the knowledge or willful blindness that its conduct will induce its customers to infringe the '993 patent's asserted claims.

61. In violation of 35 U.S.C. § 271(c), Defendant has infringed and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '993 patent indirectly by contributing to the infringement of the '993 patent's asserted claims.

62. Defendant has contributed and continues to contribute to the infringement of at least claim 1 of the '993 patent because it knew that the application and system it offers for sale and sells is infringing and not suitable for substantial non-infringing use.

63. As a result of Defendant's infringement of the '993 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

64. Defendant's infringement of the '993 patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '993 patent.

65. Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '993 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendant from continuing such infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Bytemark, Inc., prays for relief, as follows:

A.  That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 8,494,967, together with all rights of recovery under such patent for past and future infringement thereof;

B.  That United States Patent No. 8,494,967 is valid and enforceable in law and that Defendant has infringed said patent;

C.  That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 9,239,993, together with all rights of recovery under such patent for past and future infringement thereof;

D.  That United States Patent No. 9,239,993 is valid and enforceable in law and that Defendant has infringed said patent;

E.  Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent Nos. 8,494,967 and 9,239,993, including an assessment of pre-judgment and post-judgment interest and costs, and an award of supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting, as needed;

F.  That Defendant's infringement has been willful and said damages be trebled pursuant to 35 U.S.C. § 284;

G.  Entering a permanent injunction against Defendant, its officers, employees, attorneys, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the Patents-in-Suit, including without limitation, from continuing to make, use, sell and/or offer for sale;

H. That this is an exceptional case and awarding to Plaintiff its costs, expenses and reasonable attorney fees pursuant to 35 U.S.C. § 285;

I. That the Court award punitive damages to Plaintiff owing to the willful, wanton, and malicious nature of Defendant's acts; and

J. Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues triable by jury.

| | |
|---|---|
| | */s/ Christine D. Haynes* |
| | Frederick L. Cottrell, III (#2555) |
| OF COUNSEL: | Christine D. Haynes (#4697) |
| | Richards, Layton & Finger, P.A. |
| Dariush Keyhani | 920 N. King Street |
| Frances H. Stephenson | Wilmington, Delaware  19801 |
| Meredith & Keyhani, PLLC | 302-651-7700 |
| 125 Park Avenue, 25th Floor | Cottrell@rlf.com |
| New York, New York 10017 | Haynes@rlf.com |
| (212) 760-0098 | |
| dkeyhani@meredithkeyhani.com | *Attorneys for Plaintiff* |
| fstephenson@meredithkeyhani.com | |

Dated: June 1, 2018